UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TODD ZACHERL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-518 |
| | § | |
| CITY OF LA MARQUE, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

Plaintiff Todd Zacherl, the former Fire Chief in La Marque, Texas, asserts retaliation claims under Title VII and section 1981 against his former employer. His dispute with the City of La Marque began when he refused a request by city officials to fire an employee who served as president of the firefighters' union. Zacherl then filed a charge with the Equal Employment Opportunity Commission, contending that the City retaliated against him for refusing to fire the union employee. But the EEOC charge did not allege that Zacherl was subject to any discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Following his filing of that administrative complaint, another round of retaliation ensued, which is the basis for this lawsuit.

The City's summary judgment motion raises the issue of whether the filing of an EEOC charge that does not complain of conduct that Title VII prohibits may nonetheless serve as the protected activity for a retaliation claim. The language of

Title VII and the case law interpreting it answer that question in the negative. The City's motion is therefore **GRANTED**.

## I.   BACKGROUND[1]

Zacherl began working for the City in 1994. A decade later, he became Fire Chief and Emergency Management Coordinator. According to Zacherl, during a series of meetings in August 2009, various City officials "made it clear that they would destroy the Department and Plaintiff" if Zacherl did not remove or discredit his employee, firefighter John Brasher, who also served as president of the local firefighters' union. Docket Entry No. 13 ¶¶ 8–10. During that same time period, Zacherl's equipment orders were denied, vacant firefighter positions were frozen, the City Council voted down a fire truck proposal he submitted, and the firefighters' union contract died for lack of a motion at a city council meeting. Approximately four months later, the City transferred Zacherl's fire marshal duties to Efren Burns. Zacherl contends that state law does not allow Burns to be a fire marshal because Burns was not the head of the department, nor did he have a police officer certification.

In February 2010, Zacherl filed his first charge of discrimination with the EEOC. In it, Zacherl states, "I believe I was retaliated against because I refused to discipline or terminate my staff for no cause." Docket Entry No. 22-1 at 1. The

---

[1] Given the summary judgment posture, the following recitation of the facts resolves all credibility determinations in Zacherl's favor.

bulk of the charge explains that City Manager Eric Gage removed Zacherl's fire marshal duties and replaced him with Burns because Zacherl would not remove Brasher.  The charge concludes: "I believe I was discriminated and retaliated against in violation of Title VII," but does not mention any discrimination on the basis of race, sex, or another protected category.  *Id.*  In the section of the charge where the complainant checks a box or boxes to indicate the type of discrimination he has suffered, Zacherl checked only the box for "retaliation."

After this first EEOC charge was filed, several City officials took actions against Zacherl that he believes were in retaliation for filing the charge.  City Councilman Larry Mann "constantly" mentioned Zacherl's EEOC charge and told Zacherl that "he should have been a man" and handled the matter privately, rather causing the City to spend money fighting his complaint.  Docket Entry No. 23-2 at 3.  Zacherl also contends that the city manager demanded that two African American employees file complaints against the fire department for discrimination and hired an outside investigator who issued a report finding that a hostile work environment existed for minority paramedics working in the fire department.

In January 2011, Zacherl terminated two firefighters for failing to obtain their Class B commercial driver's licenses as was required by their pre-employment contracts.  Both of the terminated employees had been witnesses in the investigation that concluded a hostile environment for African-American

employees existed within the fire department.  A few days later, Gage placed Zacherl on paid administrative leave "due to [a] lack of confidence in [Zacherl's] overall leadership abilities."  Docket Entry No. 23-21.  That same day, Zacherl tendered his two-week notice of resignation, citing the "direct threats" that City representatives had leveled at the department and "the poisonous political environment where the tag of 'racism' is leveled against me."  Docket Entry No. 23-22.

Zacherl then filed a second EEOC charge alleging that the City took these actions against him in retaliation for filing the first EEOC charge.  In this lawsuit that followed, Zacherl brings retaliation claims under Title VII and section 1981 and asserts that he was constructively discharged.[2]

## II. STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

---

[2] Zacherl uses section 1983 as the procedural vehicle for asserting his section 1981 claim, as section 1981 does not provide an independent cause of action.  *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463 (5th Cir. 2001) (citations omitted).  Section 1983 requires Zacherl to establish that the retaliatory conduct of which he complains stemmed from a policy or practice of the City.  The City argues in its motion that Zacherl has not done so, but the Court need not reach the issue, given its ruling that any retaliation was not in response to protected activity.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

### III. ANALYSIS

#### A. Retaliation

A plaintiff establishes a prima facie case of retaliation in violation of Title VII or section 1981 by showing that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (setting forth the elements of a prima facie case for retaliation under Title VII).[3] An employee has engaged in protected activity if he "opposed any practice made an unlawful employment practice by Title VII" (the "opposition clause") or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII" (the "participation clause"). 42 U.S.C. § 2000e-3(a).

One of the City's arguments for summary judgment is that Zacherl cannot establish the first "engaged in protected activity" element because his original EEOC charge—the one that led to the second round of retaliatory conduct that is the subject of this lawsuit—did not complain about discrimination that Title VII

---

[3] The summary judgment analysis is the same for claims of retaliation under Title VII and section 1981. *See Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

prohibits. Instead, the EEOC charge focused on the City's reaction to Zacherl's refusal to fire an employee who was head of the firefighter's union. Union status is not a protected category under Title VII.[4] *See Williams v. Holiday Inn*, No. C-95-0832, 1996 WL 162992, at *2 (N.D. Cal. 1996) (rejecting Title VII claims of discrimination and retaliation on "account of union status" because it is not included in the statute's exhaustive list of protected classes). Zacherl responds that retaliation law only requires that he had a good faith belief that he was being discriminated against, not that he prove he actually was discriminated against in violation of Title VII. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (stating that a Title VII plaintiff must have only "a reasonabl[e] belief that the employer was engaged in unlawful employment practices," but need not prove that such practices were in fact unlawful (citations and internal quotation marks omitted)). This case thus turns on the intersection of these two well-established principles of retaliation law: (1) the requirement of underlying protected activity, and (2) the rule that a retaliation plaintiff need not prove the underlying complaint of discrimination so long as she had a good faith basis when making it.

---

[4] Of course, Zacherl was not a union member and thus it is not the case that he was being discriminated against for his union status. But the fact that Title VII would not apply even in that situation makes clear that Zacherl's conduct which was a further step removed—refusing to fire an employee who was a union member—does fall within a protected Title VII classification.

6 / 14

With respect to the first, the Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (holding that a general complaint of a "hostile work environment" was not protected activity because it "lacked a racial or gender basis"); *see also Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (per curiam) (holding that the plaintiff did not engage in protected activity because he complained of unfair treatment "but he never referred to the discriminatory treatment as age-based"); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir 2006) (per curiam) (affirming summary judgment where district court found "no evidence that [plaintiff], when she made her complaints to management, ever mentioned that she felt she was being treated unfairly due to her *race* or *sex*" (emphasis in original)); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (per curiam) (holding that the plaintiff did not engage in protected activity because "his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII"). While these Fifth Circuit decisions were "opposition clause" cases involving complaints and grievances submitted to management about conduct that did not—even if true—amount to unlawful employment practices under Title VII, *Harris-Childs*, 169 F. App'x at 916

(involving complaints to management); *Moore*, 150 F. App'x at 319 (involving a grievance filed with an employer), at least two courts of appeals have reached the same result in "participation clause" cases involving charges filed with the EEOC that lacked any allegations invoking a Title VII protected class such as race, sex, religion, or national origin. *See Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265–67 (3d. Cir. 2006) (affirming dismissal of retaliation claim when underlying EEOC charge just "made general complaints of unfair treatment); *Balazs v. Liebenthal*, 32 F.3d 151, 158–60 (4th Cir. 1994) (affirming dismissal of retaliation claim because the underlying EEOC charge complained about being falsely charged with sexual harassment, "an action by an employer [not] proscribed by Title VII," as opposed to being the victim of sexual harassment); *cf. Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (explaining that even under the "participation clause," the "underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII" (citation omitted)).

In *Slagle*, the plaintiff contended he was subject to retaliation after filing an EEOC charge in which he complained he was discriminated against "because of whistleblowing." *Slagle*, 435 F.3d at 263. Four months later he was fired, and he claimed in his lawsuit that the termination was retaliation for filing the charge. *Id.* at 264. The Third Circuit held that the retaliation claim failed based on the text of Title VII because the underlying EEOC charge did not allege discrimination on the

basis of any protected class:

> An employee filing a charge is protected only if the charge is brought under 'this subchapter.'  The phrase 'this subchapter' refers specifically to 42 U.S.C. [sections] 2000e through 2000e-17, the provisions that set forth an employee's rights when an employer has discriminated against him or her on the basis of race, color, sex, religion, or national origin.  It follows that a charge 'under this subchapter' is a charge that alleges discrimination on the basis of those prohibited grounds.

*Id.* at 266–67.

Like the Third Circuit, this Court "cannot dispense with the requirement that the plaintiff allege prohibited grounds" in his complaint.  *Id.* at 267.  Zacherl's EEOC charge does not do so because he claims he was discriminated against "because [he] refused to discipline or terminate [his] staff for no cause."  Docket Entry No. 22-1 at 1; *see also Slagle*, 435 F.3d at 263, 266–67 (holding that the plaintiff did not engage in protected activity because his EEOC charge alleged that "the Respondent discriminated against me because of whistleblowing, in violation of my Civil Rights, and invasion of privacy").  Nowhere in Zacherl's charge does he allege that he is being discriminated against because of his race, sex, or any other status that Title VII protects.  *See* 42 U.S.C. § 2000e-2 (prohibiting discrimination based on race, color, religion, sex, or national origin).[5]

---

[5] After filing this lawsuit, Zacherl began to contend that he lost the fire marshal position because he is white (his replacement is African American), but there is nothing in the original EEOC charge, or any evidence in the record concerning Zacherl's communications to his supervisors during that period, to indicate that he was complaining about racial discrimination prior to the

The "good faith" rule that Zacherl cites does not overcome the requirement that the protected activity giving rise to a retaliation claim must be challenging conduct that, if true, Title VII prohibits. *See Slagle*, 435 F.3d at 268 (recognizing that a retaliation claim can be brought even if the underlying charge of discrimination fails, but still holding that the charge must involve a type of discrimination that Title VII prohibits). The "good faith" rule provides that if a plaintiff complained about discrimination on the basis of race or sex or another protected category, and was subject to retaliation as a result, she can maintain a retaliation claim even if it turns out she cannot prevail on the underlying claim of discrimination. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) ("To satisfy this opposition requirement, [a plaintiff] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices." (citation and internal quotation marks omitted)). But that "reasonable belief" must relate to an "unlawful employment practice." *Id*.; *see also Byers*, 209 F.3d at 429 (rejecting a retaliation claim because the plaintiff's complaints of race discrimination were "objectively unreasonable"). To put it another way, there are two distinct, though related, requirements to establish that a plaintiff engaged in protected activity: (1) the plaintiff must have made a good faith claim that she was subject to discrimination (even if it turns out she was not

---

retaliatory conduct he alleges.

discriminated against), and (2) that discrimination, assuming it were proven, must be unlawful under Title VII.

A hypothetical involving another category of discrimination that, like union status, Title VII does not prohibit—that based on college affiliation—is illustrative. Assume an employee who graduated from the University of Texas files an EEOC charge asserting that his supervisor, an alum of Texas A&M, was discriminating against him on the basis of college affiliation by calling him a "tea-sip" and other epithets related to those universities' historic (though now sadly diminished) rivalry.  Further assume that the employee has a reasonable basis for believing he is being mistreated for being a Longhorn.  In response to the EEOC charge being filed, the Aggie supervisor retaliates against the employee.  The employee nevertheless would not have a viable Title VII retaliation claim even though he had a reasonable belief, and in fact could prove, that he was being discriminated against because he attended the University of Texas.  The protected activity must complain about discrimination "made unlawful" under Title VII.  Zacherl's EEOC charge did not, so his retaliation claims fail.

### B. Constructive Discharge

There is a second issue to address out of an abundance of caution.  Zacherl labels a section of his amended complaint "Retaliation and Constructive Discharge."  Docket No. 13 at 7.  The most natural reading of that section is that

Zacherl is alleging in support of the "adverse employment action" element of his retaliation claims that his resignation amounted to a constructive discharge. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005) ("Constructive discharge is the adverse employment action that is the basis for [plaintiff's] retaliation claim."). Indeed, absent such a constructive discharge, Zacherl would have a tough time showing an adverse employment action given the facts of his separation from the City.

But the parties' summary judgment briefing creates some confusion, indicating that perhaps the "Constructive Discharge" header is meant to assert a separate claim alleging hostile working conditions. *See Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004) (recognizing that a constructive discharge may qualify as a tangible employment action in the context of hostile work environment claims). Giving Zacherl the benefit of the doubt that such a claim is properly pleaded, the summary judgment evidence does not come close to showing "working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012), *cert. granted on another issue*, 133 S. Ct. 978 (2013) (citation and internal punctuation omitted). "Constructive discharge claims . . . are essentially hostile work environment claims but more extreme." *Id.* The Fifth Circuit examines six factors in the constructive discharge inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 481 (5th Cir. 2008) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771–72 (5th Cir. 2001)).

Zacherl has presented evidence showing a reduction in his job responsibilities when his fire marshal duties were removed, but the evidence, even when viewed in the light most favorable to Zacherl, does not rise to the level of the "something more" required to establish a constructive discharge claim. *Id.* at 480; *see also id.* at 481 (affirming summary judgment in favor of defendant on constructive discharge claim despite plaintiff's evidence of reduction in job responsibilities, reassignment, and harassment); *Brown v. Bunge Corp.*, 207 F.3d 776, 782–83 (5th Cir. 2000) (affirming summary judgment in favor of defendant on constructive discharge claim when plaintiff was criticized, demoted, and given fewer job responsibilities); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 859 (5th Cir. 2009) (per curiam) (affirming summary judgment in favor of defendant on constructive discharge claim when the plaintiff, a nurse, complained of humiliation from a patient complaint and reassignment as a result of that complaint). Moreover, even if these actions where sufficiently hostile, Zacherl has not shown that they were taken on the basis of his race (or any other protected

class), which is necessary to establish a hostile work environment claim. *See Nasser*, 674 F.3d at 453 n.9 (noting that plaintiff must show that the "harassment was based on race"); *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (noting that the plaintiff must show that "the harassment was based on sex"). Accordingly, his constructive discharge claim also fails.

## IV. CONCLUSION

For the reasons discussed above, Zacherl cannot establish that he engaged in protected activity, and summary judgment in the City's favor on the retaliation claim is warranted. And the evidence does not support a separate "constructive discharge" claim of the hostile environment strain, assuming such a claim was properly alleged. The City's motion for summary judgment (Docket Entry No. 17) is therefore **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this 6th day of June, 2013.

_____
Gregg Costa
United States District Judge